OVERTON, J.
 

 Act No. 10 of 1896, as amended by Acts 241 of 1912, 210 of 1914, and 25 of 1916, authorizes municipalities containing a population exceeding 10,000 inhabitants, the city of New Orleans excepted, to pave, gravel, macadamize, resurface, repair, and otherwise improve the streets and alleys, or any part thereof, not less than one block, within their respective corporate limits, and to levy special taxes or local assessments on the property, abutting the street to be improved, to defray the cost of the work. The second section of the Act of 1916, which amends and re-enacts, in part, the Act of 1896, as amended by the other acts mentioned, reads, in part, as follows:
 

 “That the owners of real estate so abutting [that is, on the street to be improved] shall pay two thirds (%) of the entire cost of such work or improvement and the municipality shall pay one third (%) out of its resources. * * *”
 

 With this legislation on the statute books] the commission council of the city of Shreveport concluded to widen, and otherwise improve, streets in the city, and accordingly submitted to the qualified taxpayers of the city, under section 14 of article 14 of the Constitution, and Act 46 of 1921, the following proposition, ’among others unnecessary to-men tion, to wit:
 

 “Shall the city of Shreveport incur debt and issue bonds of the city of Shreveport to the amount of $300,000 to run forty (40) years from date thereof, bearing interest at a maximum rate of 5 per cent, per annum, payable semiannually, as may be provided by the city council, for the opening up and widening of streets,, separation of grade crossings of streets and railroads, the construction of bridges, viaducts or underpasses, and purchase of property necessarily incidental thereto, including all costs and expenses in connection with the same, all located within the city of Shreveport.”
 

 The property taxpayers, at an election held for that purpose, gave their sanction to this proposition. The city thereafter issued the bonds and sold them.
 

 After the bonds had been voted, the city council passed Ordinance No. 32 of 1927. By this ordinance the city abandoned as sidewalk space, to the extent of 7 feet on each side .of the curb line, the space, which up to that time had been set aside on Marshall street, from Crockett street to Stoner avenue, for sidewalk purposes, and devoted it to street purposes proper, the purpose being to. widen Marshall street 14 feet, or 7 feet on each side.
 

 On the same day that the foregoing ordinance was passed, the city council adopted Ordinance No. 33 of 1927. This ordinance provides for paving the strips, taken from sidewalk purposes, so as to widen the pavement to the extent of the increased width of the street proper. It also provides that the paving shall be done under Act No. 10 of 1S96, and the acts cited above, which are amendatory of that act, and that one-third of the cost of the improvement shall be paid by the city, and the remaining two-thirds by the abutting property owners.
 

 When plaintiffs ascertained that the city, proposed to assess against the property owned by them, abutting on the improvement, a part of the cost thereof, they appeared be
 
 *415
 
 fore the council, and protested against such an assessment, contending that the city-should pay the entire cost of the improvement out of the proceeds of the bond issue. Failing to satisfy the council that this should be done, they applied for a writ of mandamus to force the mayor and the various commissioners, constituting the council, to pay the entire cost of the improvement out of the proceeds of the bond issue, and, for that purpose, to set aside, out of those proceeds, $43,980.10, or so much thereof as might be necessary. Besides the cause alleged as to why the writ should issue, the petition con-, tains other matter, but the allegations setting it forth are not discussed in plaintiffs’ brief, bear no relation to the relief asked, and hence are not mentioned in this opinion.
 

 In the second suit named in the title plaintiffs sue for a writ of injunction to restrain the mayor and commissioners from appropriating and using so much of the proceeds of the bond issue as is necessary to pay that part of the cost of the improvement assessed against the property abutting on the section of Marshall street, mentioned above, and to restrain the city from recording in the mortgage records the ordinance assessing the cost of the improvement against the abutting property. In this suit they also sue to have the ordinance assessing the cost declared illegal, and to require the city, as in the first suit, ,to pay the entire cost of the improvement. As reason why these demands should be allowed, they alleged that, on October 25, 1927, the council adopted Ordinance No. 137 of 1927, accepting the paving that was made necessary by the widening of Marshall street, and assessed against that property two-thirds of the entire cost of the improvement, including the cost for gutters., grading, engineering, and of ascertaining the names of the owners of the abutting property. They allege that this ordinance is null and void, because the" bond issue, authorized by the taxpayers, was sanctioned by them for the purpose, among others, of paying all costs and expenses in connection with the widening of streets, including Marshall street, and hence that the council was without authority to assess any part of the cost of such widening against the property, including theirs, abutting_ on the section of Marshall street .on which the work was done. They allege that, unless restrained from doing so, the city will record in the mortgage records the illegal ordinance levying the assessment, and that its recordation will give the city a lien on their property to which the city is not entitled. They also allege that they have reason to fear, because of repeated statements made by the mayor and the commissioners, constituting the council, that a sum sufficient to pay the entire cost of making the improvement will not be appropriated out of the proceeds of the bond issue for the purpose of paying that cost, but .only so much as is necessary to pay the one-third, which the city admits' it should pay, and that the balance necessary to accomplish that purpose will be appropriated and used for other purposes, unless the mayor and commissioners are restrained from so appropriating and using it. The petition alleges other grounds for the Issuance of the injunction, and for declaring the ordinance assessing the cost of the improvement illegal, but these grounds either possess no merit or are not supported by the record; and, as they are not discussed in plaintiffs’ brief, no further notice will be taken of them.
 

 From the foregoing, it would seem that, if plaintiffs’ interpretation of the proposition submitted to the taxpayers and approved by them is not correct, or, in other words, if that proposition does not require the city to pay out of the proceeds of the bond issue the entire cost of widening streets, including Marshall street, then neither of plaintiffs’ suits has any basis on which to
 
 *417
 
 rest. In our view, the proposition submitted to the taxpayers and authorized by them does not require the city to pay out of those proceeds the entire cost of such widening. That proposition was to issue bonds “for the opening up and widening of streets, separation of grade crossings of streets and railroads, the construction of bridges, viaducts or underpasses, and purchase of property necessarily incidental thereto, including all costs and expenses in connection with-the'same, all located in the city of Shreveport.”
 

 The objects enumerated constitute the purposes of the bond issue. There is nothing in this enumeration, or elsewhere in the proposition, that requires the city to pay the entire cost of the widening of streets, or the entire expense incidental thereto, such as the paving of a strip on each side, made necessary by the widening of the street. But plaintiffs insist that the phrase, near the end of the proposition submitted, which reads, “including all costs and expenses in connection with the same,” means the entire cost incurred in doing the work, whether or not, without the bond issue, the city might have assessed a part of the cost, under general law or under its charter, against the property abutting on the improvement or benefited by it. However, we think that the expression “all costs,” as here used, means costs ,of every nature or description, and not necessarily all of the cost, or the entire cost, incurred in making the improvement, and was inserted to provide for incidental expenses. What the council had in 'contemplation in submitting the proposition, and what the taxpayers had in contemplation in approving it, was that, wheré the entire cost, under the law, would fall upon the city, the city should be placed, in position to pay- it, and, where only a part of the cost would fall, under the law, upon the city, the city should be placed in position to pay that part, but in the latter instance it should not be required to pay the entire cost, but only its part.
 

 The city had the right to have the strips on each side of the pavement, taken from sidewalk purposes, to widen the street,, paved, in order to make the street pavement conform to the new width of the street, under its power to pave and otherwise improve streets, conferred by Act No. 10 of 1896, as amended, and especially by the amendatory Acts Nos. 210 of 1914 and 25 of 1916, and to assess two-thirds of the cost against the abutting property. The .voting of the bonds did not take away that right. The Act of 1896, as amended, should be considered in connection with the proposition submitted to the taxpayers in interpreting the latter. When so considered, it renders it very unlikely, especially in view of the special benefits that the abutting property would receive by the improvement, that the taxpayers, by approving the proposition submitted to them, contemplated that the city should assume the entire cost of the improvement. While it may be that the proposition submitted to the taxpayers could have been so framed as to have called upon the city to pay the entire cost of the. improvement, yet in our view it was not so framed.
 

 The trial court rendered judgment rejecting plaintiffs’ demand for a writ of mandamus, and also upon the trial of a rule nisi, in the suit for a writ of injunction, xefused to issue the preliminary writ asked for. The trial court was correct in both instances.
 

 For the reasons assigned, the judgments in both of these consolidated cases are affirmed.